Good afternoon, your honors. Thank you for scheduling oral argument. This case presents a very simple issue. Enforcement of the automatic stay in the Ninth Circuit. Does the automatic stay still protect the debtor from predator actions and harass and damage the bankruptcy estate, exert control over an asset of the bankruptcy estate, and would serve no legitimate litigation purposes? Let me ask you a question, Mr. Stuart. Had they simply given notice? So they have a two-page, half-page document that says, there's a bankruptcy, and then they do move for a stay. But take out the moving for the stay. If they'd just given notice of the bankruptcy, and the appellate court had, on its own, sought to, issued in order to show cause, which is what happened, would your argument still have force? What part of this do you think is stay violated? All of it? Some of it? Well, there are three stay violations. First, they argued that the stay required that it be stayed for the duration of the bankruptcy. So had they come in and said, we need a stay for health reasons, or we need a stay for some other reasons, there would be no issue. Had they gone into the bankruptcy court and gotten clarification, there would be no issue. Had they gone back to the appeals court with that clarification, there would be no issue. But they effectively froze that appeal, which is one of the largest debts and the second largest judgment, and forced the debtor and his attorney at the time to go into bankruptcy court and clean up the mess. Let me stop and ask you a question or two. They filed a document at the court of appeal, which is not a surprise. I don't want to be flipped. That happens a lot when a bankruptcy gets filed, because there can be some uncertainty, both at the court of appeal and sometimes among the parties. I know you think there shouldn't have been any, but there can be. So they filed a document that says, well, there's a bankruptcy, and at the time the posture was, I believe, they were theoretically, although they weren't the originator of the lawsuit, they were the proponent in the sense that they had a judgment against you, correct? That's correct, Your Honor. Okay. And now you may think that they shouldn't have, or it's not a good judgment or whatever, but they were the ones who were seeking to collect something from you at the time, right? No, Your Honor. That had already been stayed by the state court. So it had been stayed pending the resolution of the appeal. That doesn't change the fact they were still the party who would. I mean, the fact that they weren't doing it right that second isn't my question. My question is the posture is they were seeking something from you, correct? With their judgment, you mean. That's what I mean. Okay. Yes. All right. So to Judge Taylor's question, they filed something at the appellate court, and the appellate court does what appellate courts do, which is they issue an OSC. Let's figure this out. And you may not have agreed, but they put the burden on you, it seems, to get a determination of that. Is that accurate so far or not? They didn't say who had to get a determination, but as I read the law, the creditor has to get that determination. Well, the creditor can just as easily say nothing, can't they? The creditor can say I'll wait for whatever period of time to figure out whether I'm going to get these attorney's fees. Well, there were no attorney's fees, Your Honor. That's a separate issue. There was only Rule 68 sanctions, which are taxable costs. But that wasn't what the appeal was about. That's a public interest lawsuit dealing with constitutional law in Arizona, whether the city of Monopoly lent its credit to somebody. This isn't very helpful. I'm not understanding your question. You're not. But Judge Taylor has a different one, it sounds like. Let me sort of go back and see if this bridging question will sort of help you see where we're coming from. Judge Lafferty made the excellent point that it was the Court of Appeal in Arizona that set up the parameters of how they wanted this issue resolved. They issued an order to show cause, which under your analysis wouldn't have been void because you're saying nothing was stayed, and they said we're going to do this unless you do something. I understand your point, but here we have two clashing systems. We have a Court of Appeal that has told you we want you to do something, and you're saying, well, no, the debtor doesn't have to do it. Typically, the creditor has to do it under my theory. And I'm trying to figure out how you would have us resolve this because we certainly can't say to the Court of Appeal, your instruction is meritless, your instruction is without weight, your instruction shouldn't be followed. So what do we do with that? Well, Your Honor, they didn't give any instruction. Well, that's what an order to show cause is. An order to show cause is an instruction. We responded to it, we cited the legal authority, and in there we said Scottsdale had to go to the bankruptcy court if they wanted to stay the appeal indefinitely for the duration of the bankruptcy, which would be as long as five years. They had to go to the bankruptcy court and get that relief. But the Court of Appeal said, didn't agree with you, right? That's correct. And the Court of Appeal then set up parameters for how the Court of Appeal wanted the problem resolved. I'm just trying to figure out, this is always a problem for us when we have state, federal, we understand the Supremacy Clause, we understand, but I don't think, given principles of comity, that we have the right to say to the Court of Appeal that they can't stay their own case, and they can't set the standards by which they would lift that appeal. So that's kind of, again, what do we do with that? That's not an issue here, Your Honor. So this is, none of this would have been necessary if Scottsdale had simply gone into the bankruptcy court, gotten clarification, and then gone back to the Court of Appeals with the clarification. What makes this egregious is that my, they argued that the stay required that it be stayed, and we had to file a response. That cost money. And the purpose of the stay is to protect the debtor from that kind of stuff. So if they really wanted to stay that thing for the duration of the bankruptcy, they had to go into the bankruptcy court and get clarification. I think you raise an interesting issue, which is that the Court of Appeals needs guidance that the creditor has to go in to the bankruptcy court and get the clarification. Because if you make the debtor do it, you're imposing costs on the debtor, which the debtor just doesn't have the means to do that. That's the whole purpose of the stay, is to relieve those types of pressures from the debtor. So I'm not saying that they couldn't file a notice of bankruptcy, but they did a lot more than just filing a notice. And if the Court of Appeals had argued that we had to go in there, that would be one thing, but they didn't say one way or the other. And so the law was already clear at the time. Scottsdale had to go into the bankruptcy court, get the clarification. They're the ones that wanted the affirmative relief. They're the ones that wanted to stay the appeal for the duration of the bankruptcy. They didn't say, well, let me stay the appeal just so that we can go to the bankruptcy court and get clarification. They wanted to stay it forever. Well, on what basis do you say that? Because, I mean, again, having seen many of these, we also are very harsh with creditors who don't stop things while we figure out whether the stay is applicable. So I understand your view of this is entirely nefarious, but isn't there also arguably a more benign view of it is, which is we think we're going to prevail in this appeal. We don't want to violate the stay, so you state court don't make us do something that might be stay violative until we get a green light. So it's really, I'm trying to figure out where the stay violation, you said there are three, and I understand that one of them is the failure to remedy what you believe to be a stay violation that occurred earlier that got your appeal locked down for a while. By the way, has the appeal gone forward? It has. As far as I know, I haven't confirmed that personally, but Mr. Fowler argued that in his response. All right. It's a simple issue for the court to clarify. The law was already clear that appeals on behalf of a debtor aren't stay. So that law was already established. The question is do you protect that law or not? Does Scott still have to comply with that law or not? It's not a compliance issue, I don't think. I think that's the wrong verb here, because I think it's a respect issue for the stay. There's a couple of competing things here. We're all in agreement that this doesn't violate 362A1 because it was initiated by you ab initio. You were the plaintiff. But what do we do with the fact that, in fact, they had a very – you know what, I've taken you way past your reserved time of eight minutes. Do you want to stop here and reserve the rest of your time for rebuttal? Yes, Your Honor. Okay, let's do that. I apologize. I'll try to remember that question down the road. All right. Mr. Kaur? Turn on your microphone. My apologies. I told myself that wasn't going to happen, and then I got too excited. Good morning, Your Honors, and may it please the Court. Vale Klor of Dickinson-Wright on behalf of the Appalachian City of Scottsdale et al. Your Honors have drilled down on the issue precisely, which is there was state court litigation initiated by the debtor in which the City of Scottsdale obtained an award of taxable costs, double taxable costs under Rule 68, and expert witness fees, all told about $49,000 or so. Not an insignificant amount, but not massive by any means of the scale of it, Your Honors are used to seeing. When that debtor filed his bankruptcy petition on May 4th, that case was briefed. It was set for oral argument in June of 2019. And when the city received notice, the city did what all creditors are supposed to do. It went, oh, there's potentially a case in which I will be taking action against property of the estate because on the appeal, I'm going to attempt to vindicate the $50,000 or so I received in Rule 68, double taxable costs and expert witness fees. So the city did what all creditors are supposed to do, what the courts have made clear, and what Your Honors, when you're not serving on the BAPC, every day. The creditor said, Court of Appeals, please hold on for a moment. Let's stop. Let's figure out where all this is so that we can make sure we don't violate the estate because of the draconian sanctions that are rightfully available under Section 362 for a creditor who does violate the automatic estate. Well, plus the fact that if you did, whatever you did would have been void under Schwartz. Exactly, Your Honor. Let me ask you a question. I mean, Judge Taylor points out quite correctly that you did a little bit more than a five-month notice of bankruptcy. And there was a suggestion that the Court of Appeals ought to just hold off for a while, right? There was a suggestion that the fact that the Court of Appeals should hold off for a moment rather than just say, Your Honors, we're giving notice. It's, Your Honors, give notice, and by the way, we need to stop this because if you don't stop this, there's a chance that I will be in violation of the automatic estate. Well, is Mr. Stewart correct that your suggestion was you need to stop it for five years? The suggestion was, and it was drafted by non-bankruptcy counsel. It says it's, one moment, Your Honor. I've got it. It says be stayed pending resolution from the bankruptcy proceedings. Now, what I assume that to mean and what I interpret that to mean is until the bankruptcy court provides some clarification, and that's exactly what the relief the Court of Appeals granted, which was to say, I'm going to issue an order to show cause. Mr. Stewart, tell me why it shouldn't be stayed, and then we can proceed or not proceed. And the bankruptcy court made very clear who the burden was on, and this is very common in Arizona appellate courts. The burden is on the party who is the debtor to come back and say, here is the status of the bankruptcy proceedings, and this is why the case should proceed or not proceed. And the bankruptcy courts, sorry to strike that, the Court of Appeals order is very clear. It is further order directing appellate, Mr. Stewart, the debtor, to advise this court no later than June 19 of the status of the bankruptcy proceedings. Well, and Mr. Stewart's point is that's, at least in his mind, against bankruptcy policy, if not something else. If that was putting a burden on the debtor, the debtor shouldn't have. My apologies, Your Honor. And if that is a challenge that Mr. Stewart has, his beef, his gripe, is with the Arizona Court of Appeals. He could have sought a petition for special action. He could have sought a motion for reconsideration of the Court of Appeals. He didn't do that. In fact, Your Honor, what he did do is, through counsel, provided the notice of bankruptcy proceedings. At Act 155, Your Honor, Mr. Stewart's counsel, Mr. Zwillinger, filed a notice of status of bankruptcy proceedings advising this court that his bankruptcy lawyer is preparing and will shortly file a motion to lift the automatic stay. Right. So Mr. Stewart is before you now saying, I shouldn't have had that burden, I shouldn't have had to do it, but his counsel did it. Well, and told the Court of Appeals he wasn't going to do it. My apologies, Your Honor. And told the Court of Appeals he was going to do it. Exactly. Exactly, Your Honor. Then there was nothing further about this until approximately September, after Mr. Stewart had filed his bankruptcy attorney, my office received an email saying, you're in violation of the automatic stay. That doesn't make much sense to me, Your Honors, but in any event, there was a motion for sanctions against myself, Ms. Sanchez, who's no longer with my firm, my firm, the city, the city assistant, the city attorney, for violation of the automatic stay, when all that the city did was ask, let's just pump the brakes, let's just slow down so that we don't accidentally violate the stay, because that's what creditors are supposed to do. And as the bankruptcy court found, that is sound public policy. You do not want to disincentivize creditors from hitting the brakes on litigation where affirmative relief has been awarded against the debtor. You want caution, and you want them to proceed with caution. So because this court is in the business of making law, it would just be, it would put creditors over a barrel and put them in an impossible position where I'm potentially in violation of the automatic stay if I ask for a stay of pending litigation, and I'm in violation of the automatic stay if I don't, and I proceed at my peril. Let me ask you a question on a point that I'm sure Mr. Stewart is going to want to make forcefully in his rebuttal. Your position would be, I take it, that there's all the difference in the world between telling the court of appeal there is a bankruptcy, there is an automatic stay, we should not proceed until the scope of that stay is determined, and we all know that we're on sound ground going forward, versus an injunction. The thesis of Mr. Stewart is what you effectively did was get an injunction, and that would be an exercise, an act to exercise control over property of the estate. Exactly, Your Honor, and the debtor makes that position very clear, and it's in his opening brief, and sort of backs away from it in the reply. And the reason the debtor backs away from it in the reply and insists that the court look to the effect and not labels is because the Supreme Court of the United States has been very clear that a stay is not an injunction. It's not even synonymous with an injunction. That's the Gulf Stream case? That's both Gulf Stream and McKenna v. Holder, Your Honor. One more point, if I may, Your Honors, and I'm certainly happy to answer any more questions, but one additional point. The city is permitted, by all accounts, the case law is very clear, the city is permitted to protect its own interest and to ensure its own interests are protected in litigation initiated by the debtor. The debtor does not have free reign to litigate and can simultaneously tie the hands of creditors in that litigation. The city certainly has an interest, a sound and vested interest, in not violating the automatic stay of Section 362. It would be absurd to say that a creditor has no interest in not getting sanctioned by the bankruptcy court. Sorry, go ahead, Judge Taylor. My apologies. One of the things that I think is interesting here that holding in my head is a little difficult and maybe you can help me is, on the one hand, Mr. Stewart is saying there's no stay. No stay in this litigation at all. And I guess my question is, if there's no stay in this litigation, why can't you file whatever you want? Where's the, you know, how do we, what's a stay by? So we have unstayed litigation, but you can't do certain things. Why couldn't you seek an injunction in that litigation if it wasn't stayed? And that's, Mr. Gilliam needs to answer that too, but I'm having a hard time with the exposition. I absolutely understand Your Honors' difficulty wrestling with it because the cognitive dissonance necessary to grapple with it is almost indescribable. There would be, for instance, I think, circumstances where it would be inappropriate for me to file things in a case that is not subject to the automatic stay. For instance, if I were to file a counterclaim and attempt to seek some provisional remedy, that might be stayed. That might be subject to the automatic stay. That would be an A3 violation. Correct. It would be an attempt to seize control of the property of the debtor post-petition. So absolutely, it would be an A3 violation. But that's not what happened here. So the debtor characterized it as offensive versus defensive. Offensive would be my hypothetical where there was some sort of writ of attachment or garnishment, something like that, an affirmative attempt to control property of the debtor of A3 that's clearly preempted by A3, as opposed to some defensive action. This is certainly a defensive action. A defensive, whoa, let's stop. Defensive not only in that case, but defensive in the sense that it prevents the city from ultimately being held responsible, potentially, for a stay violation. And that seems to be what the debtor wants, is if the city goes left, it's guilty of a stay violation. If the city goes right, it's guilty of a stay violation. If the city goes center, it is guilty of a stay violation. There's no possible outcome, apparently, that I can discern from the debtor's briefing where one can go to avoid the stay violation. The debtor also seems to confuse property of the estate. So I want to touch on that briefly, if I may, Your Honors. The debtor seems to move back and forth as to whether or not the city purportedly, I believe the only basis he cited in A3. So if the property of the estate is the case, what we call the state court appeal, the city didn't take control of that case. If anybody did, the court of appeals did, because the court of appeals, of course, has jurisdiction and the providence to govern its own docket. If it's the sort of abstract property of the estate that Mr. Stewart spent in attempting to litigate that case or brief the issue for the court of appeals on behalf of an OSC issued, or due to an OSC issued by the court of appeals, that's not a stay violation. There is a price associated with seeking the fresh start granted by the code. And the debtor spending that money is perhaps unfortunate, but is a reality of seeking the fresh start initiated by the code. In sum, Your Honors, and again, I'm happy to answer any more questions that the panel of the two of you may have, is this court has made clear over and over again, the automatic stay is a shield for the honest but unfortunate debtor, not a sword for the litigious to seek damages. If you have no further questions for me, Your Honors, I believe I've concluded. I've got one that may be a little bit off the wall, but I'm just a little bit curious. Not that I can figure out why you would have done that, but let's just say for fun you had gone to the bankruptcy court and said we're not sure this is affected by this stay or not, but it should be. For the following five reasons, please prohibit this appeal from going forward. Would that have been a violation of the stay? Under the debtor's view of the world, I think it would be, Your Honor. How about under yours? Under mine, certainly not. A comfort order wouldn't be seizing control of the estate. What Your Honor has proposed is slightly an inverse comfort order. Your Honors, please tell me that I shouldn't litigate this case because it would be subject to the automatic stay. Or there are five good reasons why it shouldn't be litigated now. Precisely. Look, the debtors are going to have a lot of weight on that argument because they are, you know, the debtor is going to be management of itself and its weight is going to be, its argument is going to be taken seriously. But that act by itself wouldn't violate a stay, right? No, I do not believe so, as far as I understand it, Your Honor.  Thank you, Your Honors. Thank you. All right, Mr. Stewart. Let's see how much time you have. Four minutes and 19 seconds for rebuttal. You may commence. Well, Your Honor, what's missing in all this is, well, first of all, there's a lot of mischaracterization of my arguments. But the appeal was fully briefed and there was nothing else for them to do. And if they wanted to stay indefinitely, duration of the bankruptcy, they needed to come in and, they can't even explain, well, what interest were we protecting with this stay? What were we afraid was going to happen? Right? Was there an oral argument set for June 11, 2019? That's correct, Your Honor. So there was something that was going to be done, right? Well, but we're not arguing that participating in litigation violates a stay. What we're arguing is that exercising control over an asset and misleading the court of appeals and not seeking clarification from the bankruptcy court violates a stay. I'm not arguing that you can't participate in litigation. They'd already participated in the litigation. They'd already fully briefed the appeal, as had we. What if they had said, the bankruptcy court's going to decide this issue. We think it's important before you do anything that the bankruptcy court decide that issue, stay it. Would that have been a stay violation? I'm uncomfortable with hypotheticals because I feel like you don't want to deal with the reality of what they did. Oh, I think I'm perfectly capable of dealing with the reality. I don't think that's what this is about. I think I'm asking you to differentiate between what seems to be a very fine line you're trying to walk and trying to say, if the litigation is not stayed, then how can they violate the stay by participating in the litigation by asking for an affirmative recovery therein? They can't. That's all I'm saying. Then they didn't. No, no, I'm just saying, just by participating in the appeal, they can't violate the stay. If they tried to enforce the judgment. Participation in the appeal. Why isn't this just participation in the appeal? Assume that they didn't ask for it based on the stay. Assume it was an injunction. Assume it's an unstayed litigation. Can't they do whatever they want? As long as they're not seeking under A3 to take control of other assets. And you've already told us A3 isn't implicated by this, that it's only an A1 issue. I haven't said that. I've argued all of the issues, Your Honor. But if it's an A3 issue, then they had every reason to seek, to give the notice and say, don't make us violate A3. Great. It seems to me you're trying to have your cake and eat it, too. I'm trying to give you a chance to tell me why that isn't true. I'm saying this is very simple. If they were really worried about violating the stay, all they had to do was go into bankruptcy court, get the clarification, go back into the Court of Appeals, give them the clarification. They weren't worried about that. What they wanted to do was to create a lot of costs for the debtor. So my attorney would then have to go into bankruptcy court and get the clarification. Well, your attorney said he was going to do that. What did we do with that, Mr. Stewart? My attorney didn't say he was going to do that. Your attorney filed something that said, we will soon be seeking clarification from the bankruptcy court. I haven't seen that. Is that cited in the record? Yes. I think the Court of Appeals had ordered that we had to respond within a certain number of days. But he has a conflict of interest with me. He's one of my creditors. So he can't participate in the bankruptcy. He told me that. So he can't go into the court. Okay. He was expecting my bankruptcy counsel to go into the court and do that, and my bankruptcy counsel wants to get paid to do that. And that's the problem. Understood. Okay. Understood. All right. We're a few seconds over, so your time is up. Thank you for your arguments, and this will be submitted. And again, Judge Brand will be reviewing the argument when she is able to do so. Thank you, Your Honor. And with that, thank you. We will conclude this second session. Thank you very much for your good time, and thank you to those in Pasadena who have made this possible. Thank you very much.
judges: Taylor, Lafferty, Brand